And I'll turn to the calendar of Foley v. United States of America. Oh, yeah. No, a little further back. I can't see it from there. Thank you. Good morning. You may proceed. Good morning, Your Honor. May it please the Court, my name is Barclay Johnson. I'm an attorney with the Federal Defender's Office in Vermont. I'm pleased to be here on behalf of Ronald Foley. Connecticut's robbery offense is not a common law robbery offense. There is no requirement that there be a face-to-face confrontation or that the minimal amount of physical force required to commit the offense be used to overcome the victim's will. It, therefore, cannot qualify as a violent felony under the force clause. And we know these factors are crucial because in Stokeling, the Supreme Court held that even though common law robbery and the specific Florida offense at issue there could be committed with minimal physical force, it was the face-to-face nature of the encounter and the physical contest over the victim's property that made the minimal physical force into the violent physical force that's required under the Armed Career Criminal Act. But haven't we just held to the contrary in Shabazz? Judge LaValle wrote, Connecticut's statute defines robbery essentially as understood in the common law and largely throughout the United States as requiring the use or threat of force to take property from the person of another without the person's consent. How is that? Shabazz is inconsistent with Stokeling. Stokeling redefines how we think about offenses involving or requiring only minimal physical force. Connecticut's offense is plainly one of those that requires minimal physical force. But Connecticut's robbery offense is not a common law robbery offense. It goes beyond and expands on the common law definition in at least two. Consistency, that's just that we've gone a little bit beyond. So why are we not bound by Shabazz? Stokeling redefines how the analysis needs to be conducted. Stokeling tells us when minimal physical force is involved, you need something else to make that minimal physical force into the violent physical force that the force clause requires. I understood part of the analysis in both Stokeling and in Thrower just decided as to New York and in Connecticut was that although the offense can be committed with minimal physical force, the requirement of the presence of another person and overcoming the will of another person always includes in it kind of inherently the threat that real violent force will be, that the confrontation will escalate to the use of violent force. And in all cases, that is sufficient to satisfy 924E. Is that incorrect? I think that's Stokeling's holding. What's not correct is that Connecticut requires that. The Connecticut offense expands on common law robbery in at least two ways. It criminalizes situations where physical force or the threat of physical force is used to compel the delivery of property and thus does away with that face-to-face requirement and with the requirement that the victims will be overborn in some physical sense. But Judge LaValle read the statute as requiring even minimal force when employed in the taking of property from the person of another inherently implicates a realistic threat of causing pain or injury, so it qualifies as violent physical force. There has to be a person there. It's not burglary in the middle of the night or taking something that's abandoned where no person is present. I think that's just inconsistent with the statute as it's written. Do you think Judge LaValle reads the statute wrong, the Connecticut statute? I think the statute plainly adds to what we think of common law robbery another or different version of it, saying the force is used to compel the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny. He refers to the basic definition of robbery under 53A.133 in Connecticut. As a person commits robbery in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of preventing and so on. That's only the first part of the definition. There is a second part to the definition, which reads as follows, where the use of the force is for the purpose of quote compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny. But that still is modified by the opening words of the statute, which says again, he uses or threatens the immediate use of physical force upon another person. Doesn't that opening part apply to the second section as well? It certainly does, but I think the verb to compel expands upon the range of conduct that's envisioned by overcoming physical force in a physical sense or overcoming victim's will. Can I go back a step and ask you how you get to make this argument given the fact of Mr. Foley's finding that it was untimely? We think it's not untimely. We think it is timely. The conclusion that it's not timely because the Supreme Court hasn't expressly recognized this specific rule is wrong in a couple of respects. It reads a merits analysis into 2255F3 and in so doing reads out of the statute the requirement that the claim merely be asserted. The Seventh Circuit and Cross. The New Circuit to have joined you in that belief that it conflated the merits analysis with the time analysis. The First Circuit reached a similar result in a slightly different context, but there are courts in the Seventh Circuit, the First Circuit, and the D.C. Circuit granting these petitions. The second reason is this is merely an application to the mandatory guidelines of the rule already announced. It's just the logical application of Johnson to an identical provision. There's no requirement that the Supreme Court expressly apply existing precedent to each specific new concept. Sessions v. DiMaia confirms that. It's just a straightforward application. In DiMaia the court says Johnson's straightforward and the application of Johnson to the slightly different residual clause in Section 16B is straightforward. The residual clause here is in fact identical and the application is all the more straightforward. Your argument is because Mr. Foley was subject to mandatory, not discretionary, sentencing that that takes him out of Beckles? Right, and the logic of Beckles in fact supports this. Beckles is expressly limited to advisory guidelines. The logic of Beckles in fact hinges on the fact that the guidelines were at one point mandatory and then became advisory. And the court in so doing expressly contrasts the mandatory guidelines that Mr. Foley was sentenced under and the advisory guidelines that were at issue in Beckles. If we agree with you and let you bring this case, whether or not you would win on the merits, it would benefit a very finite group of petitioners. I don't think so. The dissent recently by I believe Justice Ginsburg suggests that there's upwards of 1,000 people sentenced under the mandatory. That's finite. It's finite, yes. That's everyone in federal facilities now. Exactly. Thank you. You have reserved two minutes for rebuttal. We'll hear from the government. Good morning, Your Honors. Greg Waples appearing for the United States Attorney's Office. As we set out in our brief, we believe there are at least five reasons why the judgment of the district court should be affirmed. Unless you judges steer me in a different direction, I propose to talk only about one, the last, the robbery issue. As we all know, just a month ago, a panel of this court decided Shabazz, where the panel unambiguously held that all forms of Connecticut robbery constitute violent felonies within the meaning of the Armed Career Criminal Act. That holding applies fully to the identical language in the career offender guideline, and therefore Shabazz is binding on a proposition relevant to this case. Even if we allowed counsel, as he and I just discussed, to get over the timely issue, he loses on the merits. He loses on four preliminary grounds before we get to the merits, but in our submission, he also loses on the merits. Unless this court accepts the proposition that Stoeckling effectively overruled Shabazz, and I don't think that there's any basis in the law or in logic for that. By the way, Your Honors, I do want to point out something, two things, actually. First of all, the defense has called into question the interrelationship of Stoeckling and Shabazz and whether Shabazz retains vitality in light of Stoeckling. It seems to me, I suggest, that the best panel of judges to pass on the interplay between Shabazz and Stoeckling is the Shabazz panel. I have been told that Mr. Shabazz has asked for and received an extension of time until February 19th to file a petition for rehearing. I would only assume that Stoeckling would be front and center in any such petition, so it seems like the question that looms in this case about Stoeckling and Shabazz is something that's going to get resolved by the panel that wrote Shabazz. It seems like it would be prudent for this court to wait for that ruling, the disposition of the petition for rehearing, before you move on. Secondly, there's a plain error issue here. The argument that Mr. Foley now makes after Stoeckling is that Connecticut robbery is broader than common law robbery, and therefore it may not, a constitute a predicate under the career offender guideline. Mr. Foley did not raise this issue in the district court. He did not raise it in his principal brief to this court or in his reply brief. So we submit that under well-established rules, he has forfeited this argument, and if it is going to be reviewed at all, it would only be for plain error. Plain error, it's hard to find plain error in this case because of Thrower. Thrower, after Stoeckling, addressed whether New York robbery constitutes a violent felony under the Armed Career Criminal Act, and the operative portion of the New York statute is textually identical to the general definition of Connecticut law, and the Thrower opinion, as we indicated in our 28J letter, noted that New York penal law section 160.00, textually identical to the Connecticut statute, explicitly incorporates the common law definition by explaining that physical force means enough force to prevent or overcome resistance to the taking or to compel the owner to deliver up the property. Clearly taking into account the second clause of the definition of robbery that Mr. Johnson talks about as broadening what generally is understood as common law robbery. More fundamentally, Mr. Johnson's objection to how Stoeckling applies to the Connecticut statute is broader, because in addition to codifying the overcoming of resistance to the immediate taking of property, or the retention, it goes further, as New York statute does, and criminalizes confrontations where the threat is intended to cause the victim to deliver up property at some point in the future. The objection that Mr. Johnson makes, to my mind, may go to the question of whether Connecticut law constitutes generic robbery within the meaning, for instance, provision of the career offender guideline. But that issue was already decided by this court in Pereira Gomez. Mr. Johnson's objection about the second clause dealing with forcing a victim to deliver up property does not speak at all to the degree of force that is necessary to commit robbery. And therefore, that portion of Stoeckling in no way undermines the conclusion that all forms of robbery in Connecticut involve either the use or threatened use of physical force, either to take property or to compel property to be delivered up, and therefore satisfies not generic robbery, but the elements clause of the career offender guideline. Unless the Court has additional questions, I would be happy to yield the rest of my time. Thank you. Thank you, counsel. We'll hear from the plaintiff's counsel. Mr. Johnson, two minutes for rebuttal. Thank you. Turning first to plain error, the Supreme Court has told us in Stoeckling that we need to think about the way we deal with these statutes, ones that require minimal force, and we need to think about them differently. We've done that. We've briefed it on the merits, and I don't think it's been waived or that it applies. Turning again to the Connecticut robbery statute, the statute goes further, even beyond cases where the physical force or the threat of physical force is used to compel the delivery of property, and says it applies also where it's used to compel someone to assist in a robbery. This offense, again, does away with the face-to-face component of common law robbery, with the requirement that there be a physical contest over property, that resistance be overcome, and even that there be a larceny. This is just compelling someone to assist. Carney noted that component of the statute is framed by the first clause. A person, the reference is, uses or threatens the immediate use of physical force upon another person for the purpose of . . . But compel goes beyond a face-to-face confrontation, and in Wright, the Connecticut Supreme Court . . . That is really the crux of your argument. Compel goes beyond a face-to-face . . . It's part of it. The other part is that the Connecticut Supreme Court, in Wright, has analyzed this statute and the analogous statute, larceny from a person, and said it's larceny from a person under Connecticut law that requires this face-to-face confrontation. Robbery, by contrast, requires a use or threatened use of force, but there's no requirement for a threat for a physical confrontation. We know from Stoeckling that that's part of the key. That's what transforms minimal physical force into the violent force required under the force clause. I see my time has expired. Thank you, Bill. Thanks. We'll reserve decision.